

# THE ATTORNEY GENERAL

# OF TEXAS

AUSTIN, TEXAS 78711

WAGGONER CARR
ATTORNEY GENERAL

May 5, 1966

Mr. Wm. J. Burke
Executive Director
State Board of Control
P. O. Drawer GG, Capitol Station
Sam Houston State Office Bldg.
Austin, Texas 78711

Opinion No. C-676

Re: Authority of the
State Board of
Control to accept
for verification
purposes additional
data on automobiles
after bid opening.

Dear Mr. Burke:

Your request for an opinion reads in part as follows:

"On April 5, 1966, two bid invitations
were released by the State Board of Control
covering Parks and Wildlife Departments re-
quisition #GFC-1875-S and requisition #GFC-
1876-S. The requisitions covered 60 and 68
automobiles, respectively. Sample copies of
the bid invitations are attached for your
files; the first page of the bid invitation
contains the following language:

'with exceptions and extras as per
specifications attached.'

"Bids were opened on April 20, 1966. Each
bidder identified the make, model and engine
horsepower, price per unit and delivery promise
of each bidder.

"The list of 'exceptions and extras . . .
attached' contained as item 35 the following
language:

'all bids to be accompanied by manufac-
turer's statement that engines bid were
designed to operate on regular gasoline.'

"This language of item 35 of the list which
was attached to and made a part of the bid invi-
tation as quoted in this paragraph has been var-
iously interpreted by bidders invited to bid on

-3255-

the two above numbered requisitions.

"One interpretation is that when the bidder furnished the make, model and engine horsepower and does not take written exception to the requirements listed in the attached 'exceptions and extras' which includes the language of item 35 that he in effect has accepted all requirements of the bid invitation and has additional proof of compliance with the engine fuel requirements as identified in item 35; that the information can be furnished either with or subsequent to the formal opening of the bids and that such engine design for regular fuel is not necessarily a condition that must be met before the bid can be considered.

"Also that the Board of Control may call for additional or supporting evidence of compliance with the bid invitation and that such additional information is for the use of the Board of Control in making a final determination.

"A second interpretation is that when the language of item 35 used the word 'accompanied' that it also meant that if the manufacturer's statement that engines bid were designed to operate on regular gasoline required that such statement be attached to the bid and available to the Board of Control as of the time of bid opening. It is further interpreted that information furnished subsequently cannot be considered in making the determination for the award.

"Our question is (1) where the make, model, engine horsepower, price and delivery information is given in the form of a formal bid and that no exceptions have been taken to any of the conditions in the bid document and that complete compliance with all conditions is apparently the intention of the bidder, can the Board of Control accept from the bidder a subsequent submission of data for verification purposes without jeopardizing the status of the bid?

"Our other question: (2) is the following language of item 35 'all bids to be accompanied by manufacturer's statement that engines bid were designed to operate on regular gasoline'

a condition that must be met to qualify the bid
as of the opening date and time?"

In addition to the facts stated in your request, the
requisition file reflects that the manufacturer's statement that
the engines bid by one of the bidders were designed to operate
on regular gasoline was received by the Board of Control after
the bid opening. The statement from the manufacturer in no way
changed or modified the price bid or the product bid (make,
model, engine number) but merely stated that the engines bid were
designed to operate on regular gasoline. Accompanying the other
bid was a similar statement made by a regional service manager (no
corporation or company identified) rather than an officer of the
manufacturer.

All language and every part of the bid invitations
and specifications should be given effect if reasonably pos-
sible and the bid invitation should be construed as a whole
with the view of obtaining the make, model, and engine horse-
power which is designed for the particular use required by the
Parks and Wildlife Department. Article 664-3, Section 8, Sub-
division (f)(7), Vernon's Civil Statutes.

Subdivision (f) of Section 8 of Article 664-3, V.C.S.,
controls the award of contracts to bidders and reads as follows:

"(f)  Award of Contract. The Board shall
award contracts to the bidder submitting the
lowest and best bid. In determining who is the
lowest and best bidder, in addition to price,
the Board shall consider:

"(1)  The ability, capacity and skill of
the bidder to perform the contract or provide
the service required;

"(2)  Whether the bidder can perform the
contract or provide the service promptly, or
within the time required, without delay or in-
terference;

"(3)  The character, responsibility, in-
tegrity, reputation, and experience of the bidder;

"(4)  The quality of performance of previous
contracts or services;

"(5)  The previous and existing compliance
by the bidder with laws relating to the contract
or service;

"(6)  The sufficiency of the financial resources and ability of the bidder to perform the contract or provide the service;

"(7)  The quality, availability and adaptability of the supplies, or contractual services, to the particular use required;

"(8)  The ability of the bidder to provide future maintenance, repair parts, and service for the use of the subject of the contract;

"(9)  The number and scope of conditions attached to the bid."

Since the Board of Control is required to determine whether a particular product (in the instant case automobiles) has the adaptability to particular use required by the State agency for whom the purchase is made, the Board of Control had to be satisfied in the instant case that the engines bid were designed to operate on regular gasoline and all bidders were notified in the bid invitation that only automobiles with engines designed to operate on regular gasoline would be accepted by the Board of Control.  Thus, the Board of Control is authorized under Article 664-3, V.C.S., to accept the bid of a responsible bidder who furnishes information satisfactory to the Board of Control that the automobiles bid had the adaptability to the particular use required as set out in Article 664-3.

Under the facts submitted by you, these conditions have been met in the instant case.  You are, therefore, advised that the Board of Control can accept from the bidder subsequent submission of data enabling the Board of Control to determine the adaptability of the engines bid "to the particular use required," and this data may be submitted subsequent to the bid opening without jeopardizing the status of the bid.  Under the facts submitted, no change has been made in the make, model, engine number, price, or delivery agreement by the furnishing of additional information necessary for the Board of Control to make the determination required by Section 8 of Article 664-3. It necessarily follows that the language of item 35 concerning the manufacturers statement that engines bid were designed to operate on regular gasoline is a condition that may be met subsequent to the opening date of the bids.

Mr. Wm. J. Burke, page 5, (C-676)

## S U M M A R Y

Where bid invitations for automobiles are received by the Board of Control giving the make, model, engine, horsepower, price and delivery information, and no exceptions have been taken by the bidder to any of the terms and conditions of the bid invitation, the Board of Control can accept from a bidder additional data for verification purposes enabling the Board of Control to determine the adaptability of the particular automobile bid to the particular use required of the agency for whom the purchase is made.

Yours very truly,

WAGGONER CARR
Attorney General


By: *John Reeves*
John Reeves
Assistant

JR:sck:mkh

APPROVED:
OPINION COMMITTEE

W. V. Geppert, Chairman
Pat Bailey
Wade Anderson
W. O. Shultz
Terry Goodman

APPROVED FOR THE ATTORNEY GENERAL
BY:  T. B. Wright